Yes, please, the Court. James Love here for the appellants. I'll try to be brief. In this particular case, we have a Court one of them. All right. Thank you. In this case, we have a series of complex events. My client had approximately 1,300 trips to the dump where they did intend to actually dump the material. That's not disputed, but it is 1,300 times. It's various material. And in addition, in the lawsuit, there were seven other defendants that are also sued. As I recall, there are two bases for liability. One is dumping in a dump that didn't have the right kind of licenses, and the other is starting a fire. Is that right? Yes. And dumping in a way that would cause damage in the sense of a public nuisance or a fire. The odd thing is that the fire count doesn't have – is a remedy count, but it doesn't seem to have an underlying cause of action. It seems like it just – it's simply a request for payment of the cost of putting out the fire, but there has to be some liability basis, and it's not spelled out in the count. Well, unfortunately, I didn't write the complaint, so. Well, I know that, but it has something to do with what it is that, you know, that we're doing here. Yes. In the sense that there doesn't really seem to be a cause of action for the fire. The fire seems to be simply the cleanup – part of the cleanup costs. In my reply brief, I referred to the fourth cause of action, which you're referencing, and it does track California Health and Safety Code section 13009.6, and it says that if somebody negligently releases causes to escape or allows burning of hazardous material, that that party would be liable for the cleanup costs. And that's what I believe that statute is – or that cause of action is based on. I thought it didn't matter a whole lot, because under California law, you look not just at what the third party sued the policyholder for, but also what the policyholder might ultimately be found liable for under the facts alleged in the complaint or those available to the insurer by reasonable investigation. Yes. Is that correct? I agree. Yes, absolutely. I remember that's one of those classic cases from the 60s. Right. Which one was it? It was Gray v. Zurich. Gray v. Zurich. And it was 1966. And then there's a more recent case, Montrose v. Superior Court, where the California Supreme Court reaffirmed that. So that's on your duty to defend. Yes. Yes. In my – I sent a letter to the Court about a week ago regarding a recent case, which I hope you've received, and it's Watts Industries v. Zurich American 121 Calat 4th 1029. And that case involved the duty to defend and a pollution sense. And on page 130 – or, excuse me, 1039, it has an excellent discussion regarding the duty to defend. And it indicates that the insurance carrier would have to prove that under no conceivable way would there be any potential coverage under the policy. And I think that – Now, liability, coverage, liability of the insurance company actually to cover the claim is narrower than duty to defend. Duty to defend is very broad. Right. Correct. On the duty to cover act, could you tell me exactly what the theory is? Well, the theory is that my clients could have been found negligently putting the material in the dump site, and over time, in combined action with the other defendants, there was a fire that occurred. Fires – Are you saying your clients – are you arguing that your clients negligently dumped the debris? Yes. They negligently dumped it? Well, that's our argument, that they negligently – Isn't that an intentional action? We've already settled the case. You've settled – And my client is paid in kind and the damages. And what we're trying to do is collect them from the insurance company. So you've settled the underlying action? Yes, we have settled the underlying action. We're trying to get the damages back from the insurance company. Right. Your theory is they intentionally dumped, but they were negligent as to the licensing status of the dump. Correct. And negligent as to the financing. Had we thought my client wasn't at fault, we would have fought the action. But instead, we, you know, accepted that there was some responsibility. Liability insurance, you're supposed to be at fault. Right. Right. It insures you against hurting people when it's your fault. In the Watts Industry case, at page 1040, footnote 1, there's a reference to the term occurrence. And there the – unless I'm mixing it up with another, isn't whether you're at fault. You're supposed to be at fault for liability insurance. It's whether it falls in the pollution exclusion. That's another item that we have in this case. We didn't get that far. The district court found that there was no occurrence and no duty to defend. So we didn't even get to that. Yeah, but we can affirm on any ground. Why isn't it in the pollution exclusion? Because the California Supreme Court recently decided the McKeon case. But that's very different. I mean, their – here, your problem isn't whether the kind of injuries caused are covered by the pollution exclusion. In other words, this is a clean-up case. Their problem there, their main problem there was that it wasn't a clean-up case. It was a case about the use of a chemical in the way it was intended to be used, although negligently and badly. Your problem is, as I understand it, not – doesn't pertain to what you did with the stuff, but whether the stuff is pollution. Right. So I don't see McKinnon being all that helpful, except as sort of a mood. But beyond the mood, I don't think it's very helpful. Well, I'll take what I can get. But I think what the McKinnon case is important is because it shows the insurance companies can't just use the word contaminant or irritant and say, well, it's pollution and therefore there's no coverage. The court wants – the California Supreme Court wants to see these terms used in the environmental sense where there's environmental damage. And just because there's a fire doesn't mean – I mean, that's an environmental problem, but that's a traditional – But this is environmental damage. The question is whether what you did is – what you put there was either a pollutant or – and actually, the complaint – one thing I noticed is that the complaint actually alleges that it was hazardous, the original complaint in the underlying case, I mean, said under the cause of action for fire says, Plaintiff is informed to believe that therein alleges that the cause of the fire was the storage of hazardous substances within a definition of labor code section such and such. So is your argument that what you put there was not a hazardous substance? It's not hazardous in the environmental sense. In other words, if somebody drops a two-by-four on the freeway, it's going to be a hazard for the health and safety of the public, but the two-by-four is not going to be an environmental damage kind of situation. That's where McKinnon takes care of that. Right. And what I'm saying is that we did dump trees and dirt, but this is not, quote, unquote, hazardous material. What about tires? You dump tires. Tires seem getting towards hazardous to me. Right. But the point is all we have to do is show some of the material that we dumped was not hazardous. I would think tires would be closer, but most of what we dumped was trees. Well, why is that? Why do you only have to show that some of it wasn't hazardous? Because if there's any coverage allowed for just trees, if the Court said, all right, not for tires but for trees, then the insurance company would have to defend the entire case. So if there's any conceivable grounds for twigs or for dirt or whatever. Well, wait a minute. That's duty to defend. Right. You're right on that. Whether. Duty to cover. Usually what they do is litigate or you settle so that they cover the covered claims and not the non-covered claims. Right. Now, when I was litigating this sort of thing, what we would do if they refused to defend is set them up with a release that said all the money was for the covered claims. But I don't remember seeing anything like that. No, nothing like that has been. In the documents here. But I think we haven't reached that point in the case, but I think the law in California is that if the insurance company doesn't abide by it, their obligation to defend, then they could be liable for the damages that caused the case. But if we thought that only the fire count, if it is a count, was an occurrence, an accident. The other, I have a very hard time seeing how it could be an accident. Because you just, whatever you did, you did intentionally. You put the stuff there. But you didn't mean for there to be a fire and something had occurred between your putting it there and there being a fire. So then as to the pollution count, we would only be dealing with the fire. And if we were only dealing with the fire, I don't see why as long as there were tires which were, seemed to be pollutants. Why isn't that enough right there? I think the point is, and an important question for this Court is, why did the fire start? We don't know. We don't have any evidence of this. It may not have anything to do with tires. We're just speculating as to what it might be. It might be that there was a branch that caught fire. It might be that somebody else did it. So you're saying you might have had a defense and the tires had nothing to do with it. Right. And what I'm saying is that there might be 20 percent of the case is covered and 80 percent is not. But if that's the situation under the California law, all of the cases required to be defended by the insurance company. Yeah, right. But in terms of liability, what do we do at that point? Well, the insurance company has, if they had followed the law, they would have defended the whole thing and then tried to split up the responsibility with us. Since they have not done that, then California has other remedies that are available to the insurer. But that's not an issue really before this Court. What is the case to look at for if they reach their duty to defend, then they're stuck with all the damages? There's the case of Samson, S-A-M-S-O-N, versus Transamerica. And in that case, the insurance company failed to provide a defense, and therefore they were liable for the results that occurred at trial.  And then they're precluded from litigating what's covered and what isn't for purposes of liability under the policy? Yes, Your Honor. On the one footnote I was mentioning, though, it refers to the case of Montrose v. Admiral Insurance Company at 10 Cal 4, 645. And that's the same Montrose that involved the duty to defend cases. But the facts of that are such that the California Supreme Court found there was a duty to defend, and that was a dumping case. It was a case where the chemical company dumped all sorts of things in the Stringfellow waste site, and there was found to be coverage for that. So I think we have a situation here for the mere fact that there was dumping does not indicate that we don't have coverage. That was the business of my client. When the insurance company issued the policy, they knew that's what they would do. And thank you. Thank you. Counsel. Good afternoon. May it please the Court. I'd like to talk about a couple of things that have been raised, but also point out that much of what has been said today is outside of the record. Counsel, I was sort of surprised that the insurance company didn't defend them. When I used to litigate these on all sides, we'd always defend in something like this to keep control of it. And the law, my state followed California law, which was that if anything in the complaint alleged or could be understood by a jury to allege something within the coverage or if it could reasonably be discovered by the insurance company that something within the coverage was going to give rise to liability, or if the complaint could be understood in any way or proof could be allowed under the complaint in any way that would prove anything within the coverage, there was a duty to defend under Gray v. Zurek and the whole line of authority following it for 30 or 40 years now. I don't get it. I don't get how you beat duty to defend. It was never that if there's one thing in the complaint that's outside the duty to defend, you're home free. I agree with you. The trouble here is that there is nothing in the complaint nor in the extrinsic evidence which establishes the potential for a covered claim. I thought it did because it said that they dumped stuff and it started a fire at the site. And you could say, well, regardless of how it's pleaded, right now it may be pleaded all in environmental liability terms. Even so, obviously, the plaintiff could amend the complaint as the case went on and prove common law nuisance, carelessly starting a fire, negligence, all of which would be within the coverage. If I can, let's start first with that issue. The fact is that the fact that a complaint can later be amended, and we speculate as to what later could be pled under California law, is not sufficient to give rise to a duty to defend. I thought the law was the exact opposite of what you just said. What case says that? I have the case. And off the top of my head, I could submit it. There is a case which expresses that. You can't remember it because it's the exact opposite of what I remember the law to be. It is exactly what I'm telling you. If the facts as set. I wish you knew what case. And I do. I just, right at this moment you're asking me and I'd be happy to submit it. Well, maybe, maybe the person who's sitting with you can be frantically looking for it while you're talking. No, it's not in the briefs. It is cited, however, in the case. Not in the briefs. It is cited in a case called West Oil v. Industrial Indemnity. The case is cited there, and it expressly says that a complaint, a party need not speculate as to whether it pled West Oil v. Industrial Indemnity. Because I thought the law was the opposite of what you were saying. It is a correct statement that if the allegations of the complaint can be amended to state, for example, there is a claim for only fraud and it could be amended to allege a claim for negligent misrepresentation, that sort of lesser included concept is the idea that a complaint can be amended. But the fact that a complaint can be changed later to change the facts is not grounds for giving rise to a duty to defend. And that's where I was going to focus. The complaint in this case and all of the extrinsic evidence alleges intentional dumping over a year-and-a-half period of waste. Well, they certainly meant to put it there. There's no doubt about that. But as I understand, there is at least there was a potential defense that they, A, didn't know that it was illegal to put it there, or, B, and more colorable, that they didn't have any reason to think it could start a fire. Well, let's go back to the A and part of the B, and that is the issue of whether the consequence is what we look at or the act is what we look at. And I think that the problem that is being presented here is that J.D. Land has asked this Court to focus on the consequence, the consequence being the fire. Well, that whole set of California law I find very hard to understand, or at least where the line is. For example, if you have a car that we've had a lot of hypotheticals about speeding cars, but here's my hypothetical about a speeding car. If you have a speeding car that's speeding very fast and it flips over. Yes. Is that an accident? Potentially, yes. It doesn't hit anybody. Right. No other, you know, cause that involves another person intervenes. Right. It just flips. All right. Well, if that's an accident, why isn't this fire an accident? Because the first of all, let's start about what the fire is. The fire is, in fact, the red herring in this case. The fire is the consequence of the intentional conduct. The fire was no different a result than the pollution in the first place. Well, wait. If the fire is the consequence of the intentional conduct. Right. If the fire causes the harm, that strikes me as being quite analogous to the California case that's just an old chestnut that the blue brief cites. You're intentionally speeding down the freeway at 80 miles an hour, just like everybody else on the freeway. And you know you're going 80. And you know you're going in excess of the speed limit. And you hit somebody and kill them. Your liability insurance company has to defend you. And it has to pay, even though your driving and your violation of the law were intentional. And if, in fact, you intended to hit that car, when you hit that car, there would be no coverage. But they have to defend. Because even if the pleading alleges that you murdered the people in the other car, it has the potential of admitting proof that it was an accident. But in this case, we are beyond that point, and I can go back to it. In this case, there was an issue as to whether the complaint itself and the extrinsic evidence established the existence of a potential for coverage. And in this case, the allegation. The county counsel obviously didn't know insurance law, or he would have pleaded it to make sure that the insurance company was on the hook for the money. I don't know that they would. I mean, the fact is that what happened in this case was no different. It really is no different from a situation in which J.B. Land took thousands of pounds of PCBs and deposited them in a landfill and thought that it was okay to deposit PCB in a landfill. And then the PCBs worked their way down through the soil and into the groundwater. The fact that they didn't expect it to work their way through the groundwater and into the groundwater is no different from the fact that they didn't expect there to be or anticipate that there would be a fire. It is still. Roberts. Wait. PCBs are a traditional pollutant. Rush isn't. But I'm going to get to the pollution exclusion second. What I'm really saying is that the intentional act, the conduct, according to California cases, according to Collins and the other cases that we cited, Shell Oil, Commercial Union, all say that it's not the consequence you look at when you determine an accident. It's the act. So explain to me how this is different from my hypothetical about the garlic clips. Well, I have two ways to look at that. One is I want to look at our policy language and how you define an accident. Right. The second is I don't have an answer necessarily for the car that flips over, but we do have an answer for the situation in which the car crashes into someone. I understand that. That's why I'm changing the hypothetical, where you don't have any intervening person doing it, but there is some sort of a physical force that caused that car to And similarly here, I assume that every time a bunch of brushes is dumped illegally, it doesn't start a fire. Something else had – not a person, but some unusual event must have occurred to start the fire. I don't know if that's true, because for one thing, we're talking about actual landfill materials and other things that were dumped there. We do know that the disintegration, the decomposition of these materials causes methane, and we do know, I mean, in the general sense, that you can have a spontaneous fire. The second fact is there is no evidence in this record that anything other than the dumping of the materials caused the fire. It's called a spontaneous fire. Any biological material produces methane if left in the ground long enough, right? And in fact, they were dumping, according to this period, the appellants were dumping for a year and a half. Microscopic amounts of methane are produced in your garden when you mow your lawn, right? And in – but my point is that something didn't have to intervene. It is the direct – can be the direct consequence of a period of dumping materials over a long period of time. And it also could not, and the complaint doesn't depend on any of that, right, because the complaint is interested in what intervened between the stuff getting on the property and the fire is – was not at all central to the cause of action, although it might be central to the insurance. So what are we doing to those circumstances? I don't think that it is central to the cause. I mean, I think that's the point. That's what I should say. The point is that it's a consequence of the damage. But either way, as far as the cause of action is concerned, it could be either – either could be true. That is, either this could be a extremely, you know, an inevitable result of putting the stuff on the property, or it could be an extremely unusual event that only occurred because of some chance intersection of certain materials. Right. And one might – and under the insurance policy, though, it would matter because one might be an accident and the other one might not. No. Because the accident – the test of the accident is the insured's conduct. And that's what the California cases say. It's not the result. It's not the damage. It's not what happens thereafter. What California case law says, what commercial union says, what Shell says, what Collins says, is it the action of the insurer. It says that, but we're just demonstrating through general hypotheticals that it – that – that – I'm not saying that's not right, but it's not the whole story because there seems to be some lines between situations in which there was intentional conduct and something bad happened, and that's an accident. In other instances, it isn't. But I think the answer to the question about the car speeding is it's not the car speeding that simply makes it flip. It's because the person speeding goes up onto that side mold – the side thing and it flips over because they hit something that is a hole in the ground. It is not simply the speeding, and it's never simply the speeding, as far as I know. What does it matter? What does it matter? Even if it is simply the speeding, the insurance applies. You know, the insurance company can't avoid paying because the policyholder did something wrong. That's just fundamental to liability insurance. Judge Kleinfeld, I think the important thing is the policy language says that there must be an accident, and an accident is defined to require a nonintentional conduct. There are policies, by the way, that don't require an accident. Well, intentional conduct in the law of insurance is defined so narrowly to avoid noncoverage. Why, I remember a case that I once litigated where somebody got mad at a bar that 86ed him, so he rammed the bar a couple times with his pickup truck. Drove right through it. And the law was it was an accident from the bar owner's point of view. That was really pushing it. But, my gosh, on this one, the only thing you've even got for intentional is that they dumped the materials. Even the third-party complaint, the allegations by the county are they should have known because it was such a bargain that there was something wrong with the licensing. It's obvious that negligence might be proved rather than intent as to the unlawfulness of the action. It's perfectly lawful to dump your trash in a legitimate dump. And the issue of whether the conduct ultimately turned out from a tort standpoint to be negligent or something more is dealt with by the California courts in the UHRICH, I think you pronounce U-H-R-I-C-H versus State Farm case that's cited at page 29 of our brief, and Kwan. And both of those cases and similar cases cited make clear that it is not a question of whether it's negligence from a tort standpoint or intentional conduct from a tort standpoint. The question is from an accident standpoint under definition of California law, whether the conduct at issue, not the intent of the insured in performing the conduct, but whether the act itself is an intentional, violent act. And I'm putting it too metaphysically. What the law is, is if the insured intended to bring about the harm, then insurance does not apply for that harm. Otherwise, the moral hazard would be unbearable. And so, in this case, you have a case where the insured conducted himself in such a way that it led to the insured harm, but he didn't mean to bring it about. It's covered by the liability insurance. I must respectfully disagree. The California courts can't look at Shell. The last time you had a critical point, you had no case. If you look at Shell and you look at the commercial union case and you look at Collins, it makes clear it is not the intent to cause damage that matters. It's the intent to take the conduct. You can intend the conduct. You still not intend the damage. That is obviously a false proposition. If I intend to drive on the freeway at 80 miles an hour, then you'd say my liability insurance does not apply when I hit somebody. And we know from the California case that that's false. Your Honor, I wouldn't say that because that's not the law. What I would say is that if you intentionally dump materials and ultimately it causes damage you didn't expect, there is no coverage for it, notwithstanding the fact that you did not intend the damage and you did not intend the consequence. What case is most closely employed on that? I think that Collins, Shell, commercial union, they're cited in our. But isn't that, to come back to this case, wouldn't that be pertinent if the question was whether the insured was responsible for an injury caused by the fire? In other words, if you start a fire and then somebody gets hurt, you've got to, you know, it doesn't matter whether you knew anybody was there. It doesn't matter whether you intended to hurt anybody. But here the gap isn't between the fire and an injury caused by the fire. It's between what he did and the fire starting. And that's not a question of injury. That's the physical event that he's claiming the insurance for. And that's why I have a hard time seeing why that gap, i.e., between what he did, putting stuff on the property intentionally. Let's assume, although there's some, well, putting it there may have been intentionally. There's some question about whether putting it there illegally was intentionally. But leaving that aside, there's still this gap between putting it there and having the fire cause. Well, the question, I guess, is whether one looks at the conduct of the insured or something else. And the fire, of course, according to J.B. Land, has nothing to do with them anyway. It just spontaneously occurred. And their materials weren't involved, and they didn't have anything to do with it. That's not what the complaint says. That's what the reply brief suggests, that there's no evidence. It's about the reply brief. That's not what establishes coverage. It's a complaint, since the insurance company didn't defend and get a judgment that established something else. And what the complaint says is the J.B., among others, dumped, and there was spontaneous combustion of materials at the dump site that led to expenses for fire suppression and others. And I agree with you. And the direct as the complaint says, the direct consequence of the deliberate dumping was the fire. It's a consequence. It's not the conduct. And a consequence, I can only say, and I'll move to the pollution exclusion. Under California law, clearly, it is the focus on the conduct and not the consequence that matters for the definition of accident. You really have trouble at the level of generality, I think, that you're discussing it. I mean, with fire, arson is not covered. Yes. And the consequences of arson are not covered. Right. I mean, a friendly fire, such as a fire in the fireplace, where the person intended to start the fire, and because they hadn't called the chimney sweep that fall, they've got too much creosote in the stack, starts a stack fire, catches the roof on fire, burns down the whole apartment building, that is covered, even though they intended to start the fire. Because in those cases, at a minimum, there is an intervening act, which is part of the claim, which is No. Intervening acts don't cause coverage. The reason that it's covered is there's no moral hazard attached to a friendly fire, such as a fire in the fireplace. The reason that it would be covered is because, under those circumstances, it would arise out of an accident, which would be, in part, the failure to clean out the chimney. It is – remember, we are dealing with the policy language and the issue of accident. But let me move to the pollution exclusion, because – Give me a case that says it's your way and not my way. I've cited three of them. I'm happy to submit additional briefing on that issue. So you want to – you want me to review those three that you mentioned? And I think that there are cases cited therein which discuss the fact that there's the Merced Mutual case that talks about that, the Quan case we talked about, which had to do with the consequences, California law, particularly Collins. There are others, and I'd be happy to supplement the cases that we've cited. If we look to the issue, though, of the pollution exclusion, the question, I think, that was raised at some point was whether we deal only with the – Counsel, we're way over time, so give the pollution exclusion just a brief mention. All right. The pollution exclusion itself is fully determinative of both the duty to defend and the duty to identify. Now, why isn't your pollution exclusion shot down by this Titan Corporation case? It says bricks, cement, building materials such as that aren't necessarily pollutants. In Titan, first of all, the Court held that the pollution exclusion was non-ambiguous. It might apply to that. It goes on to say that they don't reach that because they were dealing there with the own property issue. In this case, we have not only green waste and other materials. We have concrete. We have tires. But more important than that, and this is very important, let's not forget that what we were dealing with was a zoned area for a natural resource, and what the complaint alleges is that immediately upon the dumping of these materials, there was contamination of that area. The pollution exclusion in this case – Now, that's where your intervening cause comes in, because Pepper Industries says that if the policyholder dumps pollutants and then there's a fire, the fire damage is covered. The – I think that in the Pepper Industries case, they had a hostile fire exception in the exclusion. In this case, the pollution exclusion, the language I'm looking for, says that it excludes property damage which would not have occurred in whole or part but for the actual alleged or threatened discharge, dispersal, seepage, migration, release, escape of pollutants. In this case, if nothing else, even if we look at the fire – There's a complicating factor that we have. There were lots of different people dumping. Yes. Right? So we don't know that it was their pollutants that caused the problem. Yes, but – But it doesn't matter, because the pollution exclusion in this case says in whole or part but for the alleged, et cetera, of pollutants. The fact is, in this case, JV Land was actually sued for dumping materials there, illegally and wrongfully dumping materials there. Thirteen hundred loads of materials were dumped in this one site, and that's what they were sued for. The district court focused on that issue, and the district court was correct. What – JV Land was not sued for starting a fire. JV Land was sued by the county for dumping materials in a location that shouldn't have been used, and damages occurred. Those damages, as the complaint says, were the contamination of the environment, they were the threat to the groundwater, the threat to the community, and there were costs incurred because of the fire. The fact is – California Supreme Court, that says the pollution exclusion doesn't even apply to insecticide because it's not a traditional kind of way of polluting. The focus in McKinnon had not to do with whether pesticide was a pollutant, but whether there was a discharge – They said anything can be a pollutant if you just look the word up in the dictionary. But the issue there had to do with whether the discharge, disperse, or release, or escape language in that policy would apply to the direct application of a pesticide. There wasn't any question that a pesticide itself would be a pollution – a pollutant. The question there was whether when a toxic chemical is used in its intended way, could that give rise to falling within the pollution exclusion. And the Supreme Court said that we're going to look at this in the traditional environmental context. That's exactly what we have here. This is a case involving dumping of materials in a place it shouldn't have been. It's no different than had J.B. Lamb dumped PCBs. And I know that the question was raised about hazardous materials. Note, nowhere in this exclusion is there any requirement that it be hazardous. Hazardous – and there are cases cited in our briefs, and I will leave it at that, that say that pollutant need not be hazardous. It need contaminate. And in this case, dumping of these materials in a – in this case, it's not a pollutant. They were putting poison in the ground in this California Supreme Court case, McKinnon. And the Court says, well, it wasn't pollution in the ordinary traditional sense. If you just look up the dictionary definitions of the words, the pollution exclusion would eat up the coverage of the policy beyond what's intended. So it has to be pollution in the ordinary sense. There's no question it was hazardous. It was poison. But in that case, the issue did not have to do with the dumping of materials in a landfill as here. It had to do with dumping materials in the ground without a permit. And there was no question – A landfill without a permit is just dirt without a permit for dumping. And in this – and in McKinnon, the question did not have to do with the materials. It had to do with the deliberate application. So – They deliberately – Right. They deliberately applied it. Yellowjacket poison in the ground without a permit to put hazardous substances in the ground. And the Supreme Court of California said the pollution exclusion doesn't apply. And the Court held that the pollution exclusion did not apply because it did not meet the definitions of what dispersal discharge would be, not whether the material was a pollutant under those circumstances. The fact is – I don't see the language you're relying on. What page? I don't have it in front of me. Oh. Thank you, counsel. Thank you very much. Counsel? Manus v. Granger is submitted. United States v. Meredith. Counsel, this is one where all three of us have studied the briefs and the record, and all three of us are leaning toward the view that you don't get to first base. There's no jurisdiction. The appeal was filed before there was a final judgment.
judges: Kleinfeld, Wardlaw,berzon